UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID H. LAIRD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:10CV1591 TIA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court under 42 U.S.C. § 405(g) for judicial review of the denial of

Plaintiff's application for a Period of Disability and Disability Insurance Benefits under Title II of the

Social Security Act. The parties consented to the jurisdiction of the undersigned pursuant to 28

U.S.C. § 636(c).

## I. Procedural History

On August 15, 2008, Plaintiff filed an application for a Period of Disability and Disability

Insurance Benefits ("DIB"), alleging disability beginning August 8, 2008 due to back problems,

scoliosis, sinus and allergies, herniated discs, degenerative disc disease, recurring pain in back and

numbness in both feet. (Tr. 48, 152-58, 173) Plaintiff's application was denied on December 3,

2008, after which Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 45,

48-52) On December 10, 2009, Plaintiff appeared and testified at a hearing before an ALJ. (Tr. 21-

44) In a decision dated January 27, 2010, the ALJ determined that Plaintiff had not been under a

disability from August 8, 2008 through the date of the decision. (Tr. 9-16) After considering

additional evidence, the Appeals Council denied Plaintiff's Request for Review. (Tr. 1-3) Thus, the

decision of the ALJ stands as the final decision of the Commissioner.

## II.  Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff was represented by counsel.  Upon examination by the ALJ, Plaintiff testified that he was 46 years old and a high school graduate.  He weighed 245 pounds and measured 6 feet 3 inches.  He last worked as a tester, making sure that the manufactured sprayers had no leaks and sprayed correctly.  Plaintiff stopped working when the company closed its factory.  (Tr. 25-26)

With regard to his medical problems, Plaintiff testified that he previously underwent back surgery.  He had been diagnosed with scoliosis of the spine and degenerative disc disease.  Plaintiff stated that he had a herniated disc and a ruptured disc, in addition to the disc on which he had surgery.  Plaintiff further testified to having tendonitis and persistent pain in his neck, which was crooked.  He had a hernia operation but continued to experience swelling in the legs, mainly on the right.  Recent ultrasounds on his groin area showed no mass.  Plaintiff first had back surgery in 1997 after he ruptured a disc from coughing too hard.   When the disc ruptured, Plaintiff felt pain across his lower back and down his left leg.  He had numbness in his toes and pain in his leg after.  He stated that he continued to experience numbness in his left toes and stinging around his left ankle.  Plaintiff was out of work for 5 months.  (Tr. 26-28)

Plaintiff further testified that when he returned to work, he was required to stand all day, which caused problems.  Plaintiff returned to his doctor to receive restrictions allowing him to sit down during the day.  However, he stated that his employer did not want him to sit down, so he returned to his doctor for more detailed restrictions specifying the amount of time he needed to sit/stand and his weight lifting limitation.  Although the company accommodated him, he was moved

from his position as a machine operator, which involved a lot of standing and lifting, to a position as a tester, where he could sit and stand. (Tr. 28-30)

Plaintiff stated that he his problems with sitting and standing had worsened. If he stood too long, he experienced pain and numbness in his back. He described the pain as traveling across his lower back and down both legs. If he sat too long, he experienced numbness in his groin area, which required him to shift positions. Other times, he needed to lie down for long periods to relieve the pain. Plaintiff opined that he could stand for less than a half hour. With regard to sitting, Plaintiff stated that the amount of time he could sit varied according to the surface. He could sit longer on harder surfaces. He had problems getting in and out of the car. (Tr. 30-31)

Plaintiff lived by himself, and during the day he paced himself to do a little bit at a time before sitting down. He needed to lay down, usually on his side, more than once a day for over an hour. On a bad day, Plaintiff lay down for 3 or 4 hours. On a good day, he was able to do one load of laundry. Plaintiff went to the grocery store by himself and was able to push the cart and pick up one item at a time. He usually took an hour to shop, depending on what he purchased. When driving, Plaintiff could feel every bump and jolt. He sometimes visited with his brother and friends. At home, Plaintiff enjoyed watching movies, sitcoms, and reality shows on the TV. He also listened to music on the radio and read western paper-back novels. He talked to his brother and friends on the phone, but he did not have a cell phone. Plaintiff also stayed in touch with a few of his previous co-workers. (Tr. 31-37)

Plaintiff testified that he had medical insurance while employed but not since he stopped working. He was denied Medicaid. Plaintiff took Aspirin, Tylenol, and Zantac. (Tr. 37)

Plaintiff's attorney also questioned him during the hearing. Plaintiff stated that he used a cane

over the past year to prevent him from falling and to help him go up and down stairs. In addition, Plaintiff testified that he had tendonitis in his hands and arms, which caused difficulty in holding things and writing. On a bad day, he experienced numbness and tingling. He opined that he could use his hands between 5 and 15 minutes before he would need to stop due to pain and tingling. Plaintiff would then try to rub or shake out his hands, as well as take Aspirin or Tylenol. Plaintiff could not resume working for 10 to 15 minutes afterward. He stated that his right hand gave him more problems because he was right-handed and because he fell on it. However, because he did not have insurance, he did not receive an x-ray. (Tr. 37-40)

Dr. Jeffrey McGrowsky, a Vocational Expert ("VE"), also testified at the hearing. The ALJ asked the VE to assume a hypothetical individual that was restricted to light work and could not lift more than 20 pounds, with lifting up to 20 pounds occasionally and 10 pounds frequently. In addition, the individual needed to get up after sitting for a half hour to 45 minutes, then sit back down after standing for a half hour. He could maintain himself at a workstation with proper attention and concentration if he were allowed to alternate between sitting and standing throughout the day. When asked whether such individual could find a job that would allow these restrictions, the VE answered that the hypothetical person could perform semi-skilled level jobs which included shipping and receiving, stocking, and manufacturing. Unskilled light jobs that the individual could perform consisted of parking lot cashier, ticket seller, bench assembly worker, and office helper.(Tr. 40-42)

With regard to jobs at an unskilled, sedentary level, the VE stated that the person could watch security monitors which would allow the employee to stay at a workstation, be attentive to the job, and change positions. If the ALJ added further restrictions requiring the individual to leave the work station and lay down two or three times a day for significant periods of time, no jobs existed which

would accommodate such limitations. (Tr. 42-43)

In a Function Report – Adult, dated September 13, 2008, Plaintiff reported that he lived alone in a mobile home. During the day, he woke up, watched TV, had a snack then a meal later, watched more TV, and went to bed. He performed job searches once a week. He stated that his impairment caused an inability to sleep on his back and that he woke up at night with pain and/or stiffness in his back, neck, shoulder, and legs. He was able to prepare his own meals which consisted of complete meals, frozen dinners, and sandwiches. Plaintiff took 1 to 2 hours to make a meal. While at home, he also did laundry and some house cleaning. He also mowed his small yard. Plaintiff was also able to shop for groceries and household necessities. His hobbies included reading, watching TV, and listening to music. Plaintiff also talked on the phone and visited with others, including his brother. Plaintiff reported that he did not frequently go out, other than to pay bills or buy groceries. When he did go out, he rarely participated. (Tr. 187-92)

Plaintiff stated that his impairments affected his ability to lift, squat, bend, stand, reach, walk, sit, and kneel. He further reported that he could only lift 10 to 15 pounds and that his knees popped when he squatted or kneeled. How far he could walk depended on where he was walking, but Plaintiff believed that he would need to rest 5 or 10 minutes before resuming his walk. He was able to pay attention for a long time and had no problems finishing what he started or following written or spoken instructions. In addition, he got along well with authority figures and was able to handle stress and changes in routine. (Tr. 192-94)

### III.  Medical Evidence

Medical records prior to Plaintiff's alleged onset date revealed a history of neck and low back pain. A 1998 x-ray of Plaintiff's cervical spine showed minimal degenerative change. (Tr. 263) The

5

records also indicated previous lumbar disc surgery. (Tr. 319) X-rays of Plaintiff's lumbar spine taken on November 29, 2000, showed mild degenerative disc disease at L4-5 and L5-S1; mild levoscoliosis in the lumbar spine; and probable early degenerative changes in the inferior right sacroiliac joint. (Tr. 264) An MRI of the lumbar spine taken April 9, 2001 revealed moderately large left paracentral and lateral extrusion at the L4-L5 intervertebral level with significant compression of the thecal sac effacement of the left L5 nerve root; post surgical changes of the left L5 lamina with effacement of the epidural fat pad anteriorly, and mild posterior displacement of the left S1 nerve root, most likely due to hypertrophic changes of the vertebral body rather than a herniated disc or fibrosis; and mild posterior bulging of the L3-L4 intervertebral disc. (Tr. 266)

X-rays of Plaintiff's lumbar spine taken on August 1, 2001 showed degenerative disc disease at L4 and L5; facet arthrosis at L4-L5, bilateral S1 osteoarthritis; postural distortions, and no evidence of fractures. (Tr. 271) Two months later, on October 1, 2001, Plaintiff was examined by Dr. Zaki G. Ibrahim of Northland Orthopedics for complaints of back pain. Plaintiff complained of pain in the lateral aspect of his left leg which radiated to the top of his left foot. His back pain was not bothering him much at the time of the exam. Dr. Ibrahim diagnosed left leg radiculopathy, most likely due to L4-5 disc herniation but possibly due to left sided L5-S1 disc herniation. Dr. Ibrahim discussed options, and Plaintiff indicated that he was not ready to consider any operative care. Dr. Ibrahim recommended conservative treatment involving medication and chiropractic care, but noted that Plaintiff could later be a candidate for a discectomy. (Tr. 273-74) Between July 2001 and September 2008, Plaintiff was treated frequently by Dr. Stuckey, a chiropractor. (Tr. 275-82)

Plaintiff saw his primary care physician, Dr. Steven Radel, in January 2007. Dr. Radel noted a history of tendonitis and recommended that Plaintiff refrain from repetitive wrist motion. (Tr. 318)

On April 9, 2008, Plaintiff saw Dr. Radel for complaints of a knot on his left side. Dr. Radel assessed rib strain and prescribed medication. (Tr. 303) When he returned to Dr. Radel on May 21, 2008, Plaintiff's left side was swollen, and Dr. Radel noted abdominal pain and a protrusion. He recommended a CT scan. (Tr. 312) An abdominal and pelvic CT performed on May 27, 2008 revealed a small left inguinal hernia containing fat. In addition, an ultrasound of Plaintiff's liver performed on that same date showed gallstones. (Tr. 345-46)

Dr Radel referred Plaintiff to Kenneth Hacker, M.D., who recommended a laproscopic cholecystectomy as well as left inguinal hernia repair. (Tr. 339) Dr. Hacker performed the surgeries on June 27, 2008, and Plaintiff tolerated the procedures well with no complications. (Tr. 333-36) Plaintiff followed up with Dr. Hacker on July 8 and 23, 2008. Plaintiff reported pain and swelling since July 18, and Dr. Hacker recommended further testing. (Tr. 331)

On August 7, 2008, Plaintiff presented to Dr. Radel for complaints of dizziness, right ear pain, and allergy symptoms. Plaintiff returned on August 15, 2008 complaining of dizziness, congestion, and coughing. Dr. Radel assessed sinusitis and prescribed medication. (Tr. 298-99) Plaintiff returned to Dr. Radel on October 31, 2008 and complained neck pain over the past 1 ½ months. Dr. Radel diagnosed neck pain and prescribed Celebrex. He also recommended x-rays. (Tr. 317) Plaintiff continued to see his chiropractor, Dr. Stuckey between September 17, 2008 and November 18, 2008. (Tr. 362-63)

On November 24, 2008, Dr. Jack Tippett evaluated Plaintiff at the request of the state agency. Plaintiff's chief complaints included low back pain, neck pain, numbness in feet and legs, left inguinal hernia, and allergies. Plaintiff mentioned his discectomy performed in 1997 but reported no improvement. However, he returned to work with restrictions. He also mentioned numbness in his

feet and legs, specifically his left foot which was numb mainly around the left great toe and second toe. Plaintiff also reported soreness and stiffness in his neck over the past 3 months. Medication helped his allergies. Dr. Tippett noted that Plaintiff moved slowly during the interview but that he was able to get up from a chair without difficulty and did not need a cane or a crutch when walking. He could stand on his toes and heels and assume a full squatting position. In addition, Plaintiff could bend forward at the waist and reach to his knees, as well as get on and off the examining table unassisted. His neck was tender, mainly at the base and into both trapezius muscles. His range of motion was moderately restricted. Plaintiff's back showed a healed scar from prior surgery. Plaintiff had moderate tenderness in the back generally and could tilt 10 degrees to the right and the left. Examination of his upper and lower extremities showed some stiffness but normal range of motion and strength. Dr. Tippett assessed chronic low back pain with degenerative disc disease and left lumbar radiculopathy; status 11 years following lumbar discectomy; cervical strain; history of left inguinal hernia repair with recurrent symptoms in that area; allergies; and hypertension. (Tr. 286-88)

A Physical Residual Functional Capacity Assessment completed on December 3, 2008 stated that Plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk at least 2 hours during an 8-hour workday; sit about 6 hours in an 8-hour workday; and push/pull in an unlimited capacity. In addition, Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He could never climb ladders, ropes, or scaffolds. The non-examining medical consultant, Michelle Crismas based the postural limitations on back pain and degenerative disc disease. Further, Ms. Crismas stated that Plaintiff was limited in reaching all directions, including overhead due to neck strain and discomfort. With regard to environmental limitations, Plaintiff

needed to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards due to degenerative disc disease and a history of asthma. (Tr. 292-96)

Plaintiff presented to Volunteers in Medicine, Inc. on January 7, 2009, complaining of problems post-hernia surgery and neck pain. (Tr. 321-22) On January 23, 2009, Dr. Radel completed a questionnaire regarding Plaintiff's impairments. Dr. Radel reported that he first saw Plaintiff in 1997 and saw him 3 to 4 times per year after. Dr. Radel diagnosed lumbar disc disease and noted a limited prognosis. Plaintiff's symptoms included increased muscle tension/spasm; pain; and numbness, tingling, or other sensory disturbance. Dr. Radel opined that Plaintiff could sit and stand/walk for about 4 hours in an 8-hour working day. Further, Plaintiff would need to include periods of walking around during an 8-hour work day and would require a job that permitted him to shift position at will from sitting, standing, or walking. In addition, he would need to take unscheduled breaks during the day for a duration of about 5 to 10 minutes. While sitting, Plaintiff did not need to keep his leg elevated. However, he did need a cane or other assistive device while standing/walking. With regard to lifting and carrying, Dr. Radel opined that Plaintiff could occasionally lift and carry 10 pounds or less; rarely lift and carry 20 pounds; and never lift and carry 50 pounds. Plaintiff could occasionally twist, stoop/bend, crouch, and climb stairs but could rarely climb ladders. Further, he was able to frequently perform reaching in all directions, handling, fingering, and feeling. (Tr. 315-16)

Emotional factors did not contribute to Plaintiff's symptoms and functional limitations. In addition, Dr. Radel did not know whether Plaintiff's pain was sufficiently severe to interfere with attention and concentration. Plaintiff's ability to deal with work stress was moderately limited, and his impairments likely produced good days and bad days. Further, Dr. Radel opined that Plaintiff

would be absent from work about twice a month as a result of his impairments. Dr. Radel noted that his conclusions were supported by Plaintiff's lumbar disc surgery in 1997 with no recent medical records available. (Tr. 316)

On March 4, 2009, Plaintiff complained of pain in his groin. Dr. Hacker recommended Advil for pain. (Tr. 330) Plaintiff saw Dr. Ronan Lev on May 4, 2009 for complaints of testicular pain. Dr. Ronan recommended further testing. (Tr. 324-25)

Dr. Stuckey completed a questionnaire on November 19, 2009. Dr. Stuckey noted that he had been providing chiropractic services to Plaintiff every 2 weeks since July of 2001. Dr. Stuckey diagnosed intervertebral disc disorder, lumbar disc degeneration, and sacral dysfunction. He opined that no further progress was anticipated. Plaintiff's symptoms included weakness; increased muscle tension/spasm; pain; numbness, tingling or other sensory disturbance; and balance problems. In addition, Dr. Stuckey reported that Plaintiff could sit at least 6 hours and stand/walk less than 2 hours during an 8-hour working day. Further, Plaintiff needed to include periods of walking around during the day, and he required a job permitting him to shift positions at will. Plaintiff did not require unscheduled breaks. While Plaintiff did not need to elevate his legs while sitting, he did need to use a cane or other assistive device when standing or walking. Dr. Stuckey opined that Plaintiff could frequently lift less than 10 pounds; occasionally lift 10 pounds; rarely lift 20 pounds; and never lift 50 pounds. In addition, he could rarely twist, stoop/bend, crouch, or climb stairs and never climb ladders. Plaintiff was frequently able to perform handling, fingering, and feeling. He could occasionally reach in all directions. (Tr. 360-61)

While Dr. Stuckey believed emotional factors contributed to Plaintiff's symptoms and functional limitations, he acknowledged that this was not his area of expertise. He opined that

depression affected Plaintiff's pain. Further, Dr. Stuckey stated that Plaintiff's pain was frequently severe enough to interfere with his attention and concentration. In addition, Plaintiff's impairments likely produced good days and bad days. Plaintiff would need to be absent from work about 3 times a month. (Tr. 361)

A March 18, 2010 MRI of Plaintiff's lumbar spine revealed mild degenerative changes of the lumbar spine resulting in mild spinal stenosis at L3-4 and L4-5. (Tr. 370)

### IV. The ALJ's Determination

In a decision dated January 27, 2010, the ALJ found that Plaintiff met the insured status of the Social Security Act through December 31, 2013. He had not engaged in substantial gainful employment since August 8, 2008, the alleged onset date. The ALJ further found that Plaintiff had severe impairments including disorders of the spine, history of left inguinal hernia, allergies, and hypertension. However, he did not have an impairment that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 9-14)

In addition, the ALJ determined that, after carefully considering the entire record, Plaintiff had the residual functional capacity ("RFC") to perform light work, except that Plaintiff would need to alternate between seated and standing positions. In light of this RFC, the ALJ found that Plaintiff was capable of performing his past relevant work as a quality control tester. Therefore, the ALJ concluded that Plaintiff had not been under a disability from August 8, 2008 through the date of the decision. (Tr. 14-16)

### V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as

"the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that he has a severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robert v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional

activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s).  <u>Stewart v. Secretary of Health & Human Servs.</u>, 957 F.2d 581, 585-86 (8th Cir. 1992); <u>Brand v. Secretary of Health Educ. & Welfare</u>, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record.  <u>Marciniak v. Shalala</u>, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence.  <u>Id</u>. at 1354; <u>Ricketts v. Secretary of Health & Human Servs</u>., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the <u>Polaski</u>[1] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible.  <u>Benskin v. Bowen</u>, 830 F.2d 878, 882 (8th Cir. 1987).  If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. <u>Marciniak</u> , 49 F.3d at 1354.

## VI.  Discussion

---

[1]The <u>Polaski</u> factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984).

Plaintiff argues that the ALJ erred by expressing the RFC determination in terms of the exertional category of sedentary work and erred by failing to make specific findings regarding Plaintiff's ability to lift, carry, push, pull, sit, stand, or walk. Plaintiff also contends that the Commissioner erred in failing to consider new and material evidence presented to the Appeals Council, as the evidence supported an RFC finding of less than sedentary work. In addition, Plaintiff asserts that the ALJ's RFC determination was not supported by substantial evidence in that the ALJ did not include sufficient limitations regarding Plaintiff's ability to sit, stand, or walk. The Plaintiff also maintains that the ALJ failed to develop a full and fair record by not ordering a consultative examination regarding Plaintiff's mental issues. Plaintiff additionally argues that the ALJ erred by failing to follow the regulations in rejecting the opinions of Plaintiff's treating providers. Finally, Plaintiff contends that the ALJ erred in assessing Plaintiff's credibility by failing to follow the applicable rules and case law pertaining to credibility analysis and by mischaracterizing the frequency of treatment with accepted sources.

Defendant, on the other hand, asserts that the ALJ properly evaluated Plaintiff's credibility; properly weighed the medical opinion evidence; and properly formulated Plaintiff's RFC and fully developed the record. In addition, Defendant maintains that the Appeals Council properly considered additional evidence.

## A. The ALJ's RFC Determination

With regard to residual functional capacity, "a disability claimant has the burden to establish her RFC." Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004) (citation omitted). The ALJ determines a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations.'"

Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). "An 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Sieveking v. Astrue, No. 4:07 CV 986 DDN, 2008 WL 4151674, at *9 (E.D. Mo. Sept. 2, 2008). Some medical evidence must support the RFC determination. Eichelberger, 390 F.3d at 591 (citation omitted).

Here, the ALJ first assessed the inconsistencies between the medical evidence and Plaintiff's allegations. While an ALJ may not discredit a plaintiff's subjective allegations of pain solely because the allegations are not supported by objective medical evidence, an ALJ can make a factual determination that the subjective complaints are not credible in light of contrary objective medical evidence. Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (citations omitted)). The ALJ noted Plaintiff's testimony regarding the limitations resulting from his alleged impairments. The ALJ also noted that the record demonstrated that Plaintiff only infrequently sought treatment from acceptable medical sources for his alleged back problems. Indeed, he only saw Dr. Ibrahim, an orthopedist, on one occasion. "A failure to seek aggressive treatment is not suggestive of disabling back pain." Ratio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988). Treatment notes also failed to reflect ongoing symptoms, as Plaintiff often sought treatment for other complaints without mentioning musculoskeletal discomfort. (Tr. 12) In addition, the consultative examination lacked clinically significant findings. Further, Plaintiff did not identify any prescription strength medication taken on an ongoing basis for pain management. Instead, he took only Tylenol and Aspirin. The use of only over-the-counter medication for pain is inconsistent with allegations of disabling pain. Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) (citations omitted).

Further, the ALJ found significant Plaintiff's continued ability to engage in a variety of daily activities. He was able to prepare meals, do some household cleaning, do laundry, drive a car, and shop in stores. While not entirely dispositive, the ALJ noted that Plaintiff's ability to perform these activities suggested an RFC at odds with a disability finding. (Tr. 15); see Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (finding that allegations of pain can be discredited by normal daily activities inconsistent with such allegations). Further, the ALJ noted that Plaintiff worked with his alleged impairments and did not leave employment due to the deterioration of his symptoms but because the factory closed. (Tr. 11); see Stussie v. Astrue, No. 4:10CV1562MLM, 2011 WL 3943986, at *17 (E.D. Mo. Sept. 7, 2011) (finding that when a Plaintiff has worked with an impairment, that impairment is not considered disabling without demonstrating significant deterioration during the relevant time); Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) (stating that the ALJ may consider the fact that Plaintiff left work for reasons other than a medical condition when considering Plaintiff's subjective complaints).

In short, the ALJ properly assessed Plaintiff's subjective complaints and disbelieved his subjective reports based on inconsistencies in the record. See Eichelberger v. Barnhart, 390 F.3d 584, 589-90 (8th Cir. 2004) (holding that an ALJ may disbelieve subjective complaints of pain because of inherent inconsistencies and that the ALJ has the statutory duty in the first instance to assess a claimant's credibility). The ALJ then properly formulated Plaintiff's RFC in light of the evidence presented by the Plaintiff, noting that Plaintiff failed to meet his burden of demonstrating a more restrictive RFC.

The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), with the limitation of needing to alternate between sitting and standing positions. "Light

16

work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

However, Plaintiff argues that the ALJ erred by expressing the RFC initially in terms of "sedentary" work then failed to make specific findings regarding Plaintiff's limitations with lifting, carrying, pushing, pulling, sitting, standing, walking, and the like. However, the ALJ did find that the medical evidence from Dr. Radel, the treating physician, and Dr. Stuckey, the treating chiropractor, supported the need for a sit/stand option. The ALJ also found that the evidence did not support these doctors' statements indicating that Plaintiff was limited to sedentary work. Instead, the recent consultative examination revealed moderate limitations of the spine, full range of upper extremities, near full range of lower extremities, and an ability to fully squat, among other things. The ALJ noted that these findings were inconsistent with an RFC for sedentary work.

The undersigned acknowledges that Dr. Radel is Plaintiff's treating physician and that "[a] treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight . . . provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted). However, "an ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Holstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) (citation omitted). Further, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." Swarnes v.

Astrue, Civ. No. 08-5025-KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted).

Here, while Plaintiff saw Dr. Radel off and on for several years, his treatment notes are inconsistent with his completed questionnaire. For instance, none of Dr. Radel's notes indicate that Plaintiff's pain was debilitating. Indeed, Plaintiff's chief complaints were related to his hernia and allergy symptoms. (Tr.298-99, 303, 313, 345-46) Plaintiff first complained of neck pain on October 31, 2008 and stated that it had begun 1 ½ months prior, which was after the alleged disability onset date. (Tr. 317) Dr. Radel's notes fail to reflect that Plaintiff complained of pain or numbness stemming from his alleged back problems or that Dr. Radel performed any type of physical examination or objective testing that would support his opinions regarding Plaintiff's functional capacity. Instead, the statements appear to stem solely from Plaintiff's own complaints. "The ALJ was entitled to give less weight to Dr. [Radel's] opinion, because it was based largely on [Plaintiff's] subjective complaints rather than on objective medical evidence." Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (citation omitted).

On the other hand, Dr. Tippett's opinion was based on objective testing, which demonstrated slow movement but an ability to get up from a chair without difficulty and the ability to move without the assistance of a cane or crutch. While his neck was tender mainly at the base, Plaintiff's range of motion was only moderately restricted. His back had only moderate tenderness. However, he had normal range of motion and strength in his upper and lower extremities. (Tr. 286-88) In short, Dr. Tippett's extensive physical examination demonstrated that Plaintiff was not restricted to the extent he alleged with regard to his ability to use his arms and legs to lift, carry, push, or pull. Thus, the ALJ properly relied upon the consulting physician's assessment which was based on superior medical

evidence. Holstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) (citation omitted); see also Turner v. Astrue, No. 4:08-CV-107 CAS, 2009 WL 512785, at *11 (E.D. Mo. Feb. 27, 2009) (citation omitted) ("An ALJ may accord greater weight to a consulting physician only where the one-time medical assessment is supported by better or more thorough evidence . . . .").

Plaintiff argues, however, because the ALJ did not make specific, function-by-function findings regarding Plaintiff's limitations with lifting, carrying, pushing, pulling, sitting, standing, or walking, the decision is not supported by substantial evidence. An RFC determination should include a function-by function assessment of the plaintiff's ability to perform work -related activities. Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003). Where the ALJ describes the RFC only in general terms, the court is unable to determine whether substantial evidence supports the RFC determination. See Pfitzner v. Apfel, 169 F.3d 566, 568-69 (8th Cir. 1999) (finding that substantial evidence did not support the ALJ's RFC determination where the ALJ's factual findings on the issue were incomplete or nonexistent). In Depover v. Barnhart, however, the court found that the ALJ's RFC determination that addressed some, but not all, of Plaintiff's functions, was sufficient. 349 F.3d at 567. Specifically, the court found:

> Here, however, the ALJ did not simply describe the RFC in "general terms." he made explicit findings and, although we would have preferred that he had made specific findings as to sitting, standing, and walking, we do not believe that he overlooked those functions. We think instead that the record reflects that the ALJ implicitly found that [plaintiff] was not limited in these areas: We note initially that all of the functions that the ALJ specifically addressed in the RFC were those in which he found a limitation, thus giving us some reason to believe that those functions that he omitted were those that were not limited.

Id.

In the instant case, the undersigned finds that the ALJ did make specific findings with regard to Plaintiff's ability to sit and stand, stating that Plaintiff needed to alternate between sitting and standing positions. Likewise, the ALJ made implicit findings that Plaintiff was not restricted in his ability to lift, carry, push, or pull, noting that Plaintiff had a full or near-full range of motion and strength in his upper and lower extremities.[2]

Plaintiff also argues, however, that the opinions of Drs. Radel and Stuckey supported an RFC of less than sedentary work. As stated above, the ALJ properly discredited Dr. Radel's opinion in the questionnaire, as the assessment was not based on physical examination or objective testing. Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (citation omitted). Further, while Plaintiff relies heavily on the opinion of Dr. Stuckey, the undersigned notes that Dr. Stuckey is a chiropractor, which is not considered a treating source under the regulations.

Acceptable medical sources who can provide evidence to establish an impairment include licensed medical or osteopathic physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a)(1)-(5). Other sources from which the ALJ may consider evidence regarding the severity of a plaintiff's impairment and how it affects his or her ability to work include medical sources such as nurse-practitioners, physicians' assistants, chiropractors, and therapists. 20 C.F.R. § 404.1513(d)(1). While the ALJ could, and indeed did, consider Dr. Stuckey's opinions under the regulations, the ALJ was not obligated to give the opinions controlling weight. See Social Security Ruling, SSR 06-03p,

---

[2] Also significant is the fact that the ALJ asked the VE to assume an individual restricted to light work, who could lift 20 pounds occasionally and 10 pounds frequently and needed to get up after sitting for a half hour to 45 minutes and sit back down a half hour later. Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003).

71 Fed. Reg. 45593-03 (Aug. 9, 2006) (distinguishing between "acceptable" and "not acceptable" medical sources and stating that only "acceptable medical sources" can provide evidence to establish the existence of a medically determinable impairment, give medical opinions, and can be considered treating sources whose opinions may be entitled to controlling weight). Instead, the ALJ properly weighed and considered Dr. Stuckey's opinion as "as an aid to understanding plaintiff's limitations." Williams v. Astrue, No. 1:09CV183FRB, 2011 WL 854796, at *19 (E.D. Mo. March 4, 2011). The ALJ did credit the portions of Dr. Stuckey's opinion that was supported by medical evidence and relied on that opinion to find that Plaintiff could lift no more than 20 pounds and needed to alternate between sitting and standing. Thus, the Court finds that the ALJ properly determined Plaintiff's RFC and substantial evidence supports the ALJ's RFC finding.

### B.  New and Material Evidence

Plaintiff next argues that the Appeals Council was required to consider new and material evidence, specifically a March 18, 2010 MRI, that related to the time period prior to the ALJ's decision. Defendant, on the other hand, asserts that the Appeals Council did consider the evidence but found that it did not provide a basis to change the ALJ's determination. The undersigned finds that, even in light of the the new evidence, substantial evidence supports the ALJ's decision.

"When the Appeals Council has considered new and material evidence and declined review, [the court] must decide whether the ALJ's decision is supported by substantial evidence in the whole record, including the new evidence." Kitts v. Apfel, 204 F.3d 785, 786 (8th Cir. 2000). Further, remand to consider the new evidence is proper only where plaintiff demonstrates that the evidence "is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). New evidence is material where it is "'non-cumulative,

relevant, and probative of the claimant's condition for the time period for which benefits were denied.'" Hepp v. Astrue, 511 F.3d 798, 808 (8th Cir. 2008) (quoting Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997)).

Here, the MRI showed only mild degenerative changes in the lumbar spine with mild spinal stenosis at L3-4 and L4-5. Contrary to Plaintiff's assertion, these "mild" changes comport with the previous medical findings and the ALJ's decision. The ALJ did not find an absence of degenerative changes. To the contrary, the ALJ specifically noted a history of imaging studies showing degenerative changes in the cervical and lumbar spines. (Tr. 11-12) Thus, the submitted evidence is cumulative of other evidence in the record, and the undersigned finds that substantial evidence supports the ALJ's determination.

## C. The ALJ's Duty to Develop the Record

Plaintiff additionally argues that the ALJ violated his duty to develop a full and fair record by not ordering a consultative examination regarding Plaintiff's mental issues. The Defendant contends that Plaintiff did not claim disability based on a mental impairment or testify regarding any mental impairments. Therefore, the Defendant asserts that the ALJ was not obligated to seek a consultative examination. The undersigned agrees with the Defendant.

Plaintiff did not allege any mental impairment as a disabling condition in his application, in the Social Security Reports, or at his hearing. Failure to allege depression or anxiety in applications for disability benefits is a significant factor in determining the severity of an alleged mental impairment. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (finding substantial evidence in the record that plaintiff's depression did not result in significant functional limitations where plaintiff did not allege depression as the basis of her disability). Further, "an ALJ is not obligated 'to investigate

a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (quoting Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996).

Here, while Dr. Stuckey raised the possibility of depression, Dr. Radel stated that emotional factors did not contribute to Plaintiff's symptoms and functional limitations. In addition, Dr. Tippett noted no mental issues in his report. The ALJ does have a duty to develop the record; however the ALJ need only order a consultative examination where the evidence is not sufficient to support the decision or where additional evidence needed is not contained in the records of medical sources. 20 C.F.R. § 404.1519a(b)(1). As Plaintiff did not allege a mental impairment as a basis for disability in his application or during the hearing, the ALJ was not obligated to order a consultative mental examination to support the decision or obtain additional evidence. Because substantial evidence supports the ALJ's decision that Plaintiff was not under a disability from August 8, 2008 through the date of the decision, the Court will affirm the Commissioner's determination.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**. A separate Judgment in accordance with this Memorandum and Order is entered this same date.


/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2011.